# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CALLEN WILLIS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 17-cv-1959 (KBJ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Callen Willis believes that "she may have been misrepresented as having been affiliated with and/or having been under contract with the United States government minimally during 2014 and 2015" (Compl., ECF No. 1, ¶ 3) and that the Federal Bureau of Investigation ("FBI") has both "information pertaining to" this misrepresentation and "information specific to circumstances in which [she] was previously involved" (*id*. ¶ 5). In 2016 and 2017, Willis submitted a series of requests to the FBI under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, seeking records regarding herself, copies of prior FOIA/Privacy Act requests the FBI had received regarding her, and also the FBI's responses to any such requests. (*See* Decl. of David M. Hardy ("Hardy Decl."), ECF No. 15-1, ¶¶ 5–7, 9, 11–13, 18, 25, 29.) The FBI conducted searches, and while it did not locate any records responsive to Willis's requests seeking information about herself (*see id.* ¶¶ 40–41), it *did* locate and produce to Willis a total of 116 pages of records relating to FOIA/Privacy Act requests that she had previously submitted to the agency

(*see id.* ¶ 28). The agency's sole withholding (for which it invoked Exemption 6) was its redaction of the name of one FBI employee on one page. (*See id.* ¶ 28 n.4).

Before the Court at present is the FBI's motion for summary judgment, in which it argues that it has conducted reasonable and adequate searches for records responsive to Willis's various requests, and that its one Exemption 6 redaction was proper. (*See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 15, at 12–16.)[1] Willis has filed an opposition to the FBI's motion in which she maintains that she "is entitled to the release of information via FOIA pursuant to the Freedom of Information Act 5 U.S.C. § 552 in the form of a Vaughn Index." (Mot. Opposing Summ. J. ("Pl.'s Opp'n"), ECF No. 17, at 1.) Willis has also filed a separate one-paragraph motion asking this Court to compel the FBI to prepare a such an index. (*See* Mot. to Compel Preparation of a Vaughn Index ("Mot. to Compel"), ECF No. 18, at 1.)

On March 29, 2019, this Court issued an order that **GRANTED** the FBI's motion for summary judgment and **DENIED** Willis's motion seeking to compel preparation of a *Vaughn* index. This Memorandum Opinion explains the reasons for that Order. In sum, this Court finds that the FBI a conducted a reasonable and adequate search for records responsive to Willis's requests, and that the FBI has sufficiently described the reasons underlying its one redaction in the declaration that it submitted in support of its motion for summary judgment, such that a *Vaughn* index is not needed.

---

[1] Page numbers cited herein refer to those that the Court's electronic case-filing system automatically assigns.

I. **BACKGROUND**

   A. **The FBI's Electronic Databases**

The FBI has historically housed its agency records, including "applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI" in a system known as the Central Records System ("CRS"). (Hardy Decl. ¶ 32.) The FBI began using Sentinel, its next generation case management system, on July 1, 2012, and since date, "all FBI generated records are created electronically in case files via Sentinel[.]" (*Id.* ¶ 38.) Both the CRS and Sentinel are indexed, and when the FBI receives a request for records under the FOIA or the Privacy Act, it "employs an index search methodology" to locate responsive material. (*Id.* ¶ 39.)

To search the CRS, the FBI uses an automated index application, within which an individual's name may be linked to "identifying information such as date of birth, race, sex, locality, Social Security Number, address, and/or date of an event." (*Id.* ¶ 37.) In addition, if a records request seeks documents that may have been generated on or after July 1, 2012, the FBI might also perform a separate Sentinel index search. (*See id.*) *See also Hedrick v. Fed. Bureau of Investigation*, 216 F. Supp. 3d 84, 87–88 (D.D.C. 2016) (describing in detail the FBI's records systems and its search procedures).

   B. **Willis's Requests**

   1. <u>FOIPA Request No. 1347366-000</u>

By facsimile dated March 23, 2016, Willis submitted a FOIA/PA request to the FBI for "copies of all files, correspondence and other records concerning myself

3

[Callen Willis]." (Ex. A to Hardy Decl., ECF No. 15-2, at 2.)[2] On March 28, 2016, Willis sent the FBI an email message asking that "any FOIPA response be mailed to her home address via certified mail." (Hardy Decl. ¶ 8; *see id.*, Ex. D.) The FBI assigned Willis's request for records Request Number 1347366-000, and responded to the request on March 31, 2016, stating that "a search of the FBI's Central Records System failed to locate any main file records responsive to her request." (Hardy Decl. ¶ 14.) In addition, "[t]he FBI advised [Willis that] if she had additional information to provide showing she was of investigative interest to the FBI, the FBI would conduct an additional search." (*Id.*)

Willis appealed the FBI's response, and on June 6, 2016, DOJ's Office of Information Policy affirmed the FBI's determination. (*See id.* ¶¶ 15–17.)

2. FOIPA Request No. 1347366-001

On May 4, 2016, Willis sent a letter to the FBI (with extensive attachments) explaining why she believed she was of investigative interest to the agency; reiterating her interest in receiving records about herself; and seeking expedited processing. (Ex. M. to Hardy Decl., ECF No. 15-2, at 51–105.) The FBI assigned the matter Request Number 13747366-001 (*see* Hardy Decl. ¶ 22), and on June 3, 2016, it sent Willis a letter informing her that it had conducted an additional search based on the information provided in her letter, but still did not locate any responsive records in its main files (*see id.* ¶ 22). Willis did not appeal the FBI's no-records response. (*See id.* ¶ 22 n.2.)

---

[2] Instead of sending just one copy of this document request, Willis submitted a total of six duplicate or near-duplicate requests to the FBI concerning these same records, four of which sought expedited processing. (*See* Hardy Decl. ¶¶ 6–7, 9, 11-3.) For the purpose of this Memorandum Opinion, the Court has treated the six requests as one.

### 3. FOIPA Request Nos. 1380975-000 and 1380990-000

Willis sent another letter to the FBI on July 26, 2017, in which she sought two additional categories of information. First, she requested copies of her two prior FOIA/Privacy Act requests from 2016, along with any other FOIA/Privacy Act "requests submitted on my, Callen Willis's behalf by any individual other than myself, Callen Willis," and she also sought the FBI's responses to those requests. (*See* Hardy Decl. ¶¶ 25.) The FBI assigned Request No. 1380975-000 to this first aspect of Willis's request (*see id.* ¶ 26), and on January 31, 2018, it released 116 pages of responsive records, after having redacted the name of an FBI employee on one page pursuant to Exemption 6 (*see id.* ¶ 28; *id* ¶ 28 n.4).

The second part of Willis' request of July 26, 2017 (to which the FBI assigned Request No. 1380990-000), sought records pertaining to four events in Willis's life about which she believed the FBI had information: (1) her employment at Columbia University's Irving Cancer Research Center from 2014–2015; (2) the MCAT exam she took in Halifax, Nova Scotia, in January 2015; (3) her hospitalization at Lennox Hill Hospital in January 2015; and (4) her FOIA lawsuit against the Central Intelligence Agency. (*See id.* ¶ 29.)[3] On July 31, 2017, the FBI sent Willis a letter advising her that it had conducted "a search of the [Central Records System] . . . and no responsive records were located[.]" (*Id.* ¶ 31.) Willis did not appeal this no-records response. (*See id.* ¶ 31 n.6.)

---

[3] Willis submitted "a near duplicate" of this request by letter dated July 27, 2017. (*See* Hardy Decl. ¶ 30.)

C.  **Procedural History**

Willis filed the instant complaint on October 24, 2017; her pleading is 32 pages in length, to which she has attached 337 pages of exhibits, and it contains one FOIA and Privacy Act claim. (*See* Compl.) Willis maintains that she "has been the subject of death threats and other abusive tactics since 2015" (*id.* ¶ 4), and that she "has experienced a vast array of electronic errors from 2015-present too numerous to seem coincidental" (*id.* ¶ 7).[4] Willis believes that these electronic errors "suggest[] that [the FBI] has information specific" to her (*id.*); and in particular that she might have been "misrepresented as having been affiliated with and/or having been under contract with the United States government minimally during 2014 and 2015" (*id.* ¶ 3).

Significantly for present purposes, Willis's complaint maintains that the FBI's responses to her various records requests violate the FOIA, and that "the possibility exists the FBI has prohibited [her] from exercising her right [under the Privacy Act] to inspect records that may exist in order to correct records that are potentially inaccurate or irrelevant." (*Id.* ¶ 14(a).) As relief, Willis asks this Court to order the FBI "to make the requested information promptly available" to her (*id.* ¶ 17(a)), and to order the agency to search all its systems of records for all information pertaining to her, including "any and all surveillance of the plaintiff over the course of her lifetime[.]" (*Id.* ¶ 17(b).)[5] For any records that the agency withholds or redacts, Willis also

---

[4] According to the complaint, these "electronic errors" include, *inter alia*, problems contacting Apple customer service regarding her iPhone (Compl. ¶ 7(a)); issues with files in her computer (*id.* ¶ 7(b)); unknown activity on her Gmail account (*id.* ¶ 7(c)); discrepancies in her medical records (*id.* ¶ 7(e)); errors in her cell phone call logs (*id.* ¶ 7(h); issues with her health insurance electronic statements (*id.* ¶ 7(q)); and problems with electronic payments to a hospital (*id.* ¶ 7(r)).

[5] There appears to be a typographical error in Willis's complaint, as she references the "National Security Agency," rather than the FBI, in this paragraph.

requests that the agency be ordered to provide her with a *Vaughn* index. (*See id.*, ¶ 17(c).)

On May 29, 2018, the FBI filed a motion for summary judgment and attached to it a declaration from David M. Hardy, an FBI employee who oversees the agency's Records Management Office. (*See* Def.'s Mot.; Hardy Decl. at 1) In its motion, the FBI argues that it is entitled to summary judgment because the agency conducted adequate searches for records responsive to Willis's various FOIA requests (*see* Def.'s Mot. at 12–14) and properly redacted the name of one FBI employee from one page of responsive records based on FOIA Exemption 6 (*see id.* at 14–16). This Court thereafter issued an Order advising Willis of her obligation to respond to the agency's motion under the Federal Rules of Civil Procedure and the Local Civil Rules of this Court. (*See* Order, ECF No. 16 (explaining to Willis that if she failed to file an opposition to the FBI's motion, the Court could accept as undisputed the FBI's statement of facts).)

Willis filed an opposition to the FBI's summary judgment motion on August 1, 2018. (*See* Pl.'s Opp'n.) In this filing, Willis's sole argument is that she is entitled to a *Vaughn* index. (*See id.* at 1 ("This is a motion opposing summary judgment as the Plaintiff (self, non-attorney) is entitled to the release of information via FOIA . . . in the form of a Vaughn Index."))[6] Willis also filed a separate one-paragraph motion asking this Court to require the FBI to produce a *Vaughn* index for every record it is withholding as exempt. (*See* Mot. to Compel at 1.) The FBI subsequently filed an

---

[6] Willis submitted to this Court another copy of this document (*see* ECF No. 21), and pasted the substance of this document into another filing (*see* ECF No. 22).

opposition to Willis's *Vaughn* index motion (and a reply in support of its summary judgment motion), in which it argues that Hardy's declaration sufficiently describes the information the FBI has withheld, such that a separate index is not necessary. (*See* Reply in Supp. of Def.'s Mot., ECF No. 19, at 1–2.)

## II. LEGAL STANDARDS

### A. The FOIA And The Privacy Act

The FOIA "was enacted to facilitate public access to Government documents" in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal quotation marks and citation omitted). The FOIA requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The Court may enjoin a government agency from improperly withholding records in its possession or under its control at the time it receives a FOIA request. *See* 5 U.S.C. § 552(a)(4)(B). However, if "an agency does not possess or control the records a requester seeks, the agency's non-disclosure does not violate FOIA because it has not 'withheld' anything." *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015) (citing *Kissinger*, 445 U.S. at 150).

"The FOIA also contains nine exemptions—*i.e.*, specified circumstances under which disclosure is not required." *Neuman v. United States*, 70 F. Supp. 3d 416, 420–21 (D.D.C. 2014) (citing 5 U.S.C. § 552(b)). These exemptions must be construed narrowly, *see Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976), and the

government bears the burden of demonstrating that any withheld information falls within any claimed exemptions, *see Maydak v. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000). FOIA Exemption 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[,]" 5 U.S.C. § 552(b)(6), is at issue in this case.

In addition, Willis alleges a Privacy Act violation. "The Privacy Act governs federal agencies' acquisition, maintenance, use, and disclosure of information concerning individuals." *Jones v. Exec. Office of the President*, 167 F. Supp. 2d 10, 13 (D.D.C. 2001). "The Privacy Act provides an individual with access to government records that pertain to her which are contained in a system of records and allows the individual to review and have a copy made of all or any portion of the records." *Augustus v. McHugh*, 825 F. Supp. 2d 245, 255 (D.D.C. 2011) (citing 5 U.S.C. § 552a(d)).

### B. Summary Judgment In The Privacy Act And FOIA Context

Disputes arising from an agency's response to a request for records under either the FOIA or the Privacy Act "typically and appropriately are decided on motions for summary judgment." *Judicial Watch*, 25 F. Supp. 3d at 136 (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if the pleadings, disclosure materials on file, and affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Judicial Watch*, 25 F. Supp. 3d at 136 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). In the FOIA/Privacy Act context, a district court conducts a *de novo* review of the record, and the responding federal

agency bears the burden of proving that it has complied with its obligations under the FOIA and the Privacy Act. *See In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008). Because the court must analyze all underlying facts and inferences in the light most favorable to the requester, *see Willis v. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008), it is appropriate to enter summary judgment for an agency only if "the agency proves that it has fully discharged its obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996); *see also Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016) (finding that "a motion for summary judgment cannot be deemed 'conceded' for want of opposition").

"An agency seeking summary judgment in a case challenging its response to a request for records, whether that request is made under the Privacy Act or FOIA, must show that it conducted 'a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable.'" *Williams v. Fanning*, 63 F. Supp. 3d 88, 93 (D.D.C. 2014) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). A court may grant summary judgment to the agency based on information provided in "a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (internal quotation marks, citation, and alteration omitted); *see also Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1999) (highlighting the "reasonableness" standard). Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith[,]" and "can be rebutted only 'with evidence that the

agency's search was not made in good faith.'" *Defs. of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001)).

### C. Application Of The Governing Legal Standards To Pro Se Parties

When evaluating the FBI's motion for summary judgment and Willis's motion to compel, this Court must be mindful of the fact that Willis is proceeding in this matter pro se. It is clear beyond cavil that the pleadings of pro se parties are to be "liberally construed," and that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). However, it is equally clear that "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993).

This means that a pro se "complaint must still present a claim on which the Court can grant relief." *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013) (internal quotation marks and citation omitted). Likewise, when faced with a motion for summary judgment, a pro se plaintiff, just like a represented party, must comply with a court's rules regarding responses to statements of material fact and the need to identify record evidence that establishes each element of his claim for relief. *See Grimes v. Dist. of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015) ("Because Grimes is the plaintiff and so bears the burden of proof of her claims, it is well established that she cannot rely on the allegations of her own complaint in response to a summary judgment motion, but must substantiate them with evidence.").

11

## III. ANALYSIS

Willis has not disputed the FBI's Statement of Undisputed Facts or the assertions made in Hardy's declaration, nor has she made any substantive arguments in response to the FBI's motion for summary judgment. (*See* Sec. I.C, *supra*.) As such, this Court accepts as true the unrebutted facts contained in Hardy's declaration and the FBI's statement of material facts regarding the agency's responses to Willis's records requests. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) (noting that where a responding party does not file a statement of material facts in dispute, "the district court is to deem as admitted the moving party's facts"). Consistent with D.C. Circuit precedent, this Court has proceeded further to analyze whether or not the FBI is entitled to summary judgment based on these undisputed facts and the governing law, *see Winston & Strawn*, 843 F.3d at 508. For the reasons explained below, this Court has concluded that the FBI has established that it conducted a reasonable search for responsive records, and that the agency properly invoked FOIA Exemption 6 to redact the name of one FBI employee. Therefore, the FBI is entitled to summary judgment.

### A. The FBI Conducted Adequate Searches For Records Responsive To Willis's Requests

Based on Hardy's uncontested descriptions of the searches that the FBI conducted in response to Willis's various requests for records, this Court easily finds that the agency's searches were adequate—even those that revealed no responsive records. "[T]he only issue that arises when evaluating the adequacy of a FOIA search is whether the agency used appropriate methods to carry out the search, regardless of the *results* of that search." *Hedrick*, 216 F. Supp. 3d at 93 (emphasis in original). And, as

explained above, Hardy's declaration lays out a detailed description of the types of records maintained in its record systems and the manner in which the FBI organizes and retrieves records from these systems. (*See* Hardy Decl. ¶¶ 32–38.)

Hardy specifically states that "the CRS is where the FBI indexes information about individuals," and that the "CRS is the only record system where records about [Willis] would likely be maintained[.]" (*Id*. at ¶ 42.) Hardy further explains that, to identify any responsive records, FBI staff conducted CRS searches for records responsive to Willis's four FOIA requests using a three-way phonetic breakdown of her full name as search terms, along with personal information, such as her date of birth, social security number, passport number, and address. (*See id*. ¶¶ 40–41.) These searches yielded no records responsive to Request Nos. 1347366-000, 1347366-001, and 1380990-000 (Willis's requests for general information about herself). (*Id*. ¶ 40.) The FBI then confirmed these no-records results when it conducted additional searches after receiving notice of this lawsuit. (*Id*. ¶ 41.) With respect to Request No. 1380975-000 (Willis's request for prior FOIA requests/responses about her), the FBI located and produced 116 pages of responsive records, which Hardy described as "copies of correspondence to and from the FBI and Plaintiff for her 2016 FOIPA request[s]." (*Id*. ¶ 43.)

"[T]he touchstone when evaluating the adequacy of an agency's search for records in response to a FOIA request is reasonableness, and in particular, whether the agency made 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 125 (D.D.C. 2018) (quoting *Oglesby v.*

13

*U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also Physicians for Human Rights v. U.S. Dep' t of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) (noting that, "as long as this standard is met, a court need not quibble over every perceived inadequacy in an agency's response, however slight"). Willis makes no argument that the FBI's search was unreasonable, and she presents no evidence that the agency acted in bad faith; rather, she merely asserts an entitlement to the release of the information she requested. (*See generally* Pl.'s Opp'n at 1–2.) This is patently insufficient to overcome the presumption of good faith that this Court must afford to the FBI's declaration. *See, e.g.*, *Judicial Watch*, 25 F. Supp. 3d at 137; *Defs. of Wildlife*, 314 F. Supp. 2d at 8.

As such, and given the various steps that the FBI's declarant avers that the agency undertook to search for records in response to Willis's requests, this Court concludes that FBI's searches of its records systems using variations of Willis's name and identifying information about her were reasonably calculated to locate any information responsive to her four requests, *see Hedrick v. FBI*, 216 F. Supp. 3d at 93–94; *Lardner v. FBI*, 852 F. Supp. 2d 127, 134–35 (D.D.C. 2012), and that the agency is therefore entitled to summary judgment with respect to the adequacy of its searches for responsive records.

### B. The FBI Properly Relied On FOIA Exemption 6 To Redact The Name Of An FBI Employee Based On Personal Privacy Interests

In his declaration, Hardy states that the FBI has invoked FOIA Exemption 6 to redact the name of an FBI employee from one page of the 116 pages that the agency released to Willis in response to her request for records pertaining to FOIA requests about her. (*See id.* ¶¶ 28 n.4, 43–44.) This page "is an email exchange dated May 19,

2016 from Plaintiff, informing the FBI Plaintiff was submitting an appeal of the FBI's decision not to expedite processing of her May 4, 2017 FOIPA request[.]" (*Id.* ¶ 44.)

"In determining whether an otherwise responsive record qualifies for the protections of Exemption 6, a court must first determine that the record fits into one of the relevant categories—*i.e.*, 'personnel,' 'medical,' or 'similar files.'" *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d at 137–38. It is well established that a redacted name falls into the "similar files" category of Exemption 6, because the Supreme Court has broadly interpreted that phrase "to include all information that applies to a particular individual[,]" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999), regardless of "the nature of the file in which the requested information is contained[,]" *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601 (1982). This expansive interpretation "has led courts to conclude that Exemption 6 protection not only relates to entire physical files, but also encompasses bits of personal information that refer to a particular individual[,]" *Judicial Watch*, 25 F. Supp. 3d at 142 (internal quotation marks and citation omitted), including "such items as a person's name," *Lewis v. DOJ*, 867 F. Supp. 2d 1, 17 (D.D.C. 2011) (citation omitted).

If the record-categorization threshold question is satisfied, the court then looks to "whether disclosure of that document 'would compromise a substantial, as opposed to a *de minimis*, privacy interest.'" *Judicial Watch*, 25 F. Supp. 3d at 138 (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). "And finally, if the defendant successfully identifies a substantial privacy interest, the court applies a balancing test that weighs the privacy interest in withholding the record against the public's interest in the record's disclosure." *Id.* (citations omitted).

15

In the instant case, Hardy's declaration explains that the redaction pertains to the name of an FBI employee, which qualifies as a "similar file" for the reasons just explained, and that release of this information would implicate substantial privacy interests. For example, according to Hardy, release "would connect this FBI support personnel with the Plaintiff's enquiry, possibly exposing him/her to additional harassing inquiries regarding the FBI's determinations, and searches." (Hardy Decl. ¶ 47.) In addition, release of the employee's name "would allow other FOIPA requesters, members of the public, members of the press, and/or criminals to directly email other requests and inquiries for information not related to this exchange . . . , thereby, interfering with this . . . employee's abilities to conduct [his or her] daily duties." (*Id*.) Lastly, Hardy states that disclosure of this name does not serve any public interest. (*Id*. (asserting that "[r]eleasing the identity of this FBI employee would not significantly increase the public's understanding of the FBI's operations and activities, including the process by which the FBI decided how to respond to [Willis's] specific inquiry").)

Willis has not challenged any of these assertions. (*See* Pl.'s Opp'n at 1–2.) Moreover, this Court agrees that the privacy interest here is substantial, and that the public interest in release of this single name is minimal, because it "reveals little or nothing about an agency's own conduct" and "does not further the [FOIA's] statutory purpose." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (internal quotation marks and citation omitted). Thus, the Court concludes that the FBI did not violate the FOIA when it invoked Exemption 6 to withhold this employee's name.

### C. The FBI Has Demonstrated That It Has Released All Reasonably Segregable Information

"It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Central*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also* 5 U.S.C. § 552(b). Hardy identifies a single piece of information that the agency has withheld on the grounds that it is exempt from disclosure—the name of one FBI employee—and he further states that all other information responsive to Willis's records requests was provided to her. (*See* Hardy Decl. ¶ 43.) Under these circumstances, the Court must conclude that the FBI has demonstrated that it has satisfied its duty to release to Willis all reasonably segregable, non-exempt information.

### D. Willis's Request For A *Vaughn* Index Is Moot Because The FBI's Declaration Provides Sufficient Information Regarding The One Piece Of Information That The Agency Withheld

Finally, the Court must deny Willis's request that it compel the FBI "to provide an itemized, indexed inventory of every agency record or portion thereof in response to Plaintiff's request which Defendant asserts to be exempt from disclosure, accompanied by a detailed justification statement covering each refusal to release records or portions thereof in accordance with the indexing requirements of *Vaughn v. Rosen*." (Pl.'s Mot. to Compel at 1.) It is true, as general matter, that if an agency withholds information under a FOIA exemption, the agency must provide "a detailed description of the information withheld through the submission of a so-called 'Vaughn Index,' sufficiently detailed affidavits or declarations, or both." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d at 88 (citations omitted). But, here, the agency has not *withheld* any responsive records, and has *only* redacted a single piece of information (an employee's

name). Hardy's declaration not only identifies the withheld material, but also provides a cogent explanation as to why disclosure of that piece of information would constitute a clearly unwarranted invasion of that employee's personal privacy. (*See* Hardy Decl. ¶¶ 28 n.4, 43-45.) Thus, the declaration accomplishes the purposes of a *Vaughn* index, and thereby obviates any need for such an additional filing. *See Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987) (explaining that "it is the function, not the form, of the [*Vaughn*] index that is important").

IV. **CONCLUSION**

Based on the FBI's summary judgment motion and its uncontested declaration, this Court concludes that the agency conducted reasonable searches for records responsive to Willis's requests, properly invoked Exemption 6 to withhold one piece of information, and otherwise released to Willis all reasonably segregable, responsive information. Accordingly, as stated in the Order issued on March 29, 2019, the FBI's motion for summary judgment has been **GRANTED**, and Willis's motion to compel a *Vaughn* index has been **DENIED**. That Order is now a final, appealable order.

DATE: May 16, 2019

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge